RIVERBEND INVESTORS v PROGRESSIVE SURFACE
PREPARATION, LLC

Docket No. 234633. Submitted February 4, 2003, at Lansing. Decided February 14, 2003, at 9:00 A.M.

Riverbend Investors brought an action in the Ottawa Circuit Court against Progressive Surface Preparation, LLC, and others, seeking from Progressive unpaid rent, taxes, and insurance for leased realty. Riverbend had leased the realty to Greg Smith under a written agreement that disallowed assignment by the lessee in the absence of prior consent by the lessor, but allowed subleasing. The realty came to be occupied in series by several entities that employed Smith and paid the monthly rent, taxes, and insurance for the realty without an assignment by Smith of his interest in the lease. The last such entity was Progressive, from whom the plaintiff sought to collect rent, taxes, and insurance for the unexpired term of the lease after Progressive vacated the realty and paid amounts owed through its last month of occupancy. After trial on stipulated facts, the court, Calvin L. Bosman, J., entered a judgment for the plaintiff, finding Progressive liable as Smith's assignee. Progressive appealed.

The Court of Appeals *held*:

The trial court erred in finding that Progressive was an assignee of Smith with respect to the lease. Progressive was a sublessee who took possession of the realty under Smith's authority, and not from the plaintiff. Progressive did not assume Smith's obligations under the lease, and Progressive's obligation for rent ceased when it vacated the realty.

Reversed and remanded for dismissal.

LANDLORD AND TENANT — LEASES — ASSIGNMENTS — SUBLEASES.

A possessor of realty who gained possession from a lessee without an assignment by the lessee of its interest in the lease is a sublessee who lacks privity of contract with the lessor.

*Smith Haughey Rice & Roegge* (by *Jon D. Vander Ploeg*) for the plaintiff.

*Strain, Murphy & Vander Wal, P.C.* (by *Peter D. Bosch*), for the defendant.

Before: SAWYER, P.J., and JANSEN and DONOFRIO, JJ.

DONOFRIO, J. Defendant, Progressive Surface Preparation, LLC, appeals from a judgment entered for plaintiff, Riverbend Investors. The case was submitted to the trial court for decision on stipulated facts, briefs of law, and oral argument. Before submission to the trial court, plaintiff voluntarily dismissed with prejudice its claim against Sandra J. Smith. The trial court by written opinion found for plaintiff against defendant and dismissed the plaintiff's claim with respect to Greg Smith. No further appeal has been taken.

Inasmuch as the matter was submitted for decision on stipulated facts, the circuit court rendered its determination as if on cross-motions for summary disposition as a matter of law. We therefore will review the trial court's grant or denial of summary disposition de novo. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). We reverse and remand.

Plaintiff's action is for unpaid rent, taxes, and insurance at the Hudsonville Industrial Center (hereafter the "property") under a claimed lease with defendant. On September 22, 1990, plaintiff entered into a lease on the property with Greg Smith and his then business partner Brian Shoup, a nonparty. The initial lease was for a term of one year, subject to automatic renewals, and called for monthly rent, including an annual increase pursuant to the Consumer Price Index, and the payment of taxes and insurance.

Smith and Shoup were the owners of Marings Polishing and Buffing, Inc. Marings operated out of the property until 1992 and made all payments due under the lease to Riverbend until successor companies took possession of the property. However, plaintiff continued to communicate with Smith at Marings about the property annually through 1998, advising of the base rent, rent increase, and new base rent. Successor occupants of the property, for whom Smith was an employee, made rent and ancillary payments through December 22, 1998.

On June 2, 1998, defendant, through Greg Smith, notified plaintiff in writing that defendant would vacate the property in December 1998 and pay rent to plaintiff through December 22, 1998. On June 9, 1998, plaintiff, writing to Smith at defendant, rejected the letter of termination and insisted, by virtue of the renewal clause of the lease, that termination would not be effective until September 22, 1999. With respect to the duration of the tenancy, the lease provided that "[t]he lease will be renewed for annual periods on each anniversary of the commencement date unless Tenant gives Landlord written notice at least six (6) months prior to the then current expiration date."

Six months before the current expiration date was March 21 of the renewal year. During the interim dates of September 22, 1990, the date of lease inception, and December 22, 1998, the last date of payment of rent, three entities, Marings, Specialized Metal Finishing, Inc. (SMF), and defendant occupied the property. SMF acquired the assets of Marings in 1992 when Marings became financially distressed. SMF hired Smith and continued with operations at the property

until April 1997, when it experienced financial distress. SMF then surrendered its assets to its primary secured creditor, a bank. The bank sold some of the acquired assets to defendant, who hired Smith as an employee-manager of the company and took possession of the property. All rent and ancillary payments during the referenced period have been made to plaintiff by the occupying entities and not by Smith. No documents of assumption or assignment have been entertained between any of the parties or entities concerning the property. The only writings referencing the leasehold estate are eight annual rental increase letters to Smith at Marings, the termination letter by Smith at defendant, and the plaintiff's letter of rejection of the date of effective termination to Smith at defendant.

In 1993, Smith and his wife underwent a personal bankruptcy and failed to list plaintiff as a creditor. They were adjudged bankrupt on March 4, 1994. On December 23, 1998, the Smiths filed a motion to conditionally reopen the bankruptcy case to include plaintiff. Plaintiff did not object to the reopening of the bankruptcy case and any debt to the plaintiff was discharged. With respect to bankruptcy, the lease provides:

> If following the filing of a petition by or against Tenant under the provisions of the Bankruptcy Code . . . Landlord shall not be permitted to terminate this Lease as provided above, then Tenant . . . agrees promptly within no more than fifteen (15) days upon request by Landlord to assume or reject this Lease . . . . Landlord shall thereupon [the rejection of the lease after filing of bankruptcy] immediately be entitled to possession of the Property without further obligation to Tenant or the Trustee, and this Lease shall be terminated . . . .

Plaintiff attempted without success to rent out the property during the period from December 22, 1998, to September 22, 1999. The amount of damages claimed was not in dispute.

Under the stipulated facts, the trial court found that the conduct of the parties created a privity of estate and held defendant liable to plaintiff for the lease payments under the lease to the property as an assignee of Smith. The trial court further found Smith's obligation under the lease contract to plaintiff discharged in bankruptcy and vitiated under the bankruptcy terms of the lease. The trial court directed judgment for Smith.

On appeal, defendant contends that the trial court erred in finding an assignment of the lease from Smith to defendant rather than finding the tenancy to be on a month-to-month basis and subject to the proffered termination.

Defendant first argues that the lease between Smith and plaintiff was terminated automatically, and therefore not subject to assignment to defendant, by the bankruptcy terms of the lease when Smith first filed for bankruptcy in 1993, or at least when the petition to reopen the bankruptcy case was filed on December 23, 1998, to include plaintiff as an omitted creditor to discharge any debt. The argument must fail because, first, plaintiff was neither noticed as a creditor nor made a party to the proceedings to discharge. Second, Smith continued to hold over in possession of the property after both the filing and the discharge in bankruptcy. Third, the termination under the lease bankruptcy provision was not automatic. Plaintiff did not request assumption or rejection of the lease and therefore, in the absence of such request and rejec-

tion, "shall not be permitted to terminate this lease." Finally, Smith's rejection was not made manifest until the filing of the motion to reopen the bankruptcy case on December 23, 1998, to discharge the claims of plaintiff. Thereafter, the lease with respect to Smith was terminated. Defendant argues, without support, that the termination of Smith's lease vitiates any lease interest of defendant in the property. A party may not announce a position, offer no support for the proposition, and then leave it to the Court to analyze and advance the proposition. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998); *Silver Creek Twp v Corso*, 246 Mich App 94, 99; 631 NW2d 346 (2001).

Defendant next argues that in the absence of a formal assignment between the parties, monthly payments submitted to plaintiff, without an agreement to assume the obligations of the original tenants under the terms of the lease, constitutes nothing more than a month-to-month lease. Defendant argues that because the arrangement was month to month, defendant was required to only provide one month's notice of its intent to terminate its leasehold interest. MCL 554.134(1); *Gurunian v Grossman*, 331 Mich 412, 418; 49 NW2d 354 (1951). Defendant further claims that its notice of termination to plaintiff was sufficient to terminate the leasehold estate and eliminate defendant's obligation to pay rent after it vacated the premises pursuant to its notice to plaintiff.

Under the stipulated facts, the trial court found that the conduct of the parties created a privity of estate and held defendant liable to plaintiff for the lease payments under the lease to the Property as an assignee of Smith. The trial court stated:

> Although there is no written assignment from Smith to Progressive the latter took over the estate of the leased premises, occupied the premises, paid the rent, taxes and insurance and a privity of estate was created between the lessor and assignee and must be accepted by the assignee.

*   *   *

> Although Progressive correctly argues there is no privity of contract between it and plaintiff, nevertheless by operation of the law the conduct of the parties did create a privity of estate.

For purposes of this appeal the parties do not challenge the finding of an absence of a privity of contract between plaintiff and defendant.

Defendant challenges the trial court's finding of an assignment of the obligation of the terms of renewal of the lease, not the rent obligation during its possession, from Smith to itself. Defendant further challenges the term of tenancy obligation imposed by the trial court in applying a privity of estate.

Paragraph 13 of the lease as incorporated into the Stipulated Statement of Facts provides:

> Tenant may not assign this Lease. The sale, issuance, or transfer of any voting capital stock of Tenant which results in a change in the voting control of Tenant shall be deemed to be an assignment of this Lease which requires the Landlord's prior written consent under this Paragraph 13. *Tenant will be subleasing.* [Emphasis added.]

The terms of the plaintiff's lease with Smith anticipated that possession of the property may be in someone other than Smith when it provides, "[t]enant will be subleasing." Further, the lease precludes an assignment of the lease to another tenant without the consent of the landlord.

Whether the legal relationship of the parties is by sublease or by assignment is significant with respect to the rights and liabilities of each. In *Weatherwax Investment Co v PPG Industries, Inc*, 43 Mich App 546; 204 NW2d 353 (1972), the plaintiff landlord sought a declaratory judgment to determine renewal option rights under a lease. That case, like this one, was submitted to the trial court on stipulated facts and briefs. The landlord had entered into a lease with the Smith-Winchester Company for two of its units in a shopping center. The lease provided the opportunity for assignment and subletting of the premises with the consent of the landlord. Smith-Winchester fell into difficulties and sought relief under the lease. Thereafter, the landlord, Smith-Winchester, and the defendant, PPG, entered into a three-party written agreement wherein the defendant was *substituted* for Smith-Winchester as lessee of the east half of the premises under the prior lease for the remainder of the term. Under this agreement, the defendant was to pay rent directly to the plaintiff, and " 'assume directly with [plaintiff] the obligations of lessee under the lease.' " *Id.*, 548. After taking possession, the defendant sought to invoke the renewal clause of its predecessor's lease. The plaintiff objected on the basis that the three-party agreement was a subletting, the agreement recited that the lease was still binding and in effect with respect to Smith-Winchester, and that it agreed " 'to accept Pittsburgh as substitute lessee . . . without releasing Smith-Winchester from its underlying obligations to pay full rent.' " *Id*. The plaintiff claimed that the right to renewal of the lease was vested in Smith-Winchester, and not with the defendant. The Court found the position of the plain-

tiff strained the operative provision of the agreement that required the defendant to assume the position of lessee and the plaintiff to assume the position of lessor. The Court further found that the transfer constituted an assignment vesting the defendant with renewal rights.

In the instant case, the stipulated facts reveal that other than the payment of rent as established by the landlord with notice to Smith at Marings, there were no communications, writings, or agreements between plaintiff and defendant concerning the lease or the obligations thereunder. Each year, before the anniversary of the Smith lease, plaintiff notified Smith, eight consecutive times, of the rental increase. Clearly, the lease payments were always made by the entity in possession and accepted by plaintiff. These factors together with the fact that the lease precluded assignments, but allowed nonconsensual subleasing, suggest that plaintiff intended that the status of defendant be that of a sublessee rather than an assignee. We must conclude that defendant was a sublessee to Smith taking possession of the property under Smith's authority and not from the landlord.

Defendant further challenges the trial court's imputation to defendant of the renewal period under the theory of privity of estate. That imputation, however, was predicated on the finding of an assignment. Possession of property alone may create a privity of estate. However, a privity of estate obligates the possessor to perform only those covenants that run with the land. The covenant to pay rent runs with the land. *Buhl Land Co v Franklin Co*, 258 Mich 377, 379; 242 NW2d 772 (1932). In *Buhl,* the defendant was an assignee of a lessee without the express consent of

the lessor. The lessor accepted rent for several years from defendant. After default, the lessor commenced suit to recover rent, ancillary costs such as remodeling, and to impose a lien against the personal property of the defendant under the terms of the lease. The court ruled that the defendant was obligated to the plaintiff for the payment of rent for its possession of the premises. However, the defendant was not obligated to the plaintiff for the remodeling costs owed under the lease. Further, the plaintiff was not entitled to assert its lien rights under the lease against the defendant. The court reasoned that with respect to the claim for remodeling costs, none was owed in the absence of privity of contract. Therefore, with respect to the plaintiff's right to assert a lien on personal property as provided in the lease, such claim must similarly fail because the defendant was obligated by privity of estate, and not by privity of contract. *Id.*, 380-381.

A similar result was reached in *George Realty Co v Gulf Refining Co*, 275 Mich 442; 266 NW 411 (1936). The plaintiff sought to recover rent from the defendant. The defendant was the assignee of a lessee's lease with the plaintiff. The lease contained no restrictions against assignment and declared the lease binding upon assigns. During its possession, the defendant performed its obligations under the lease. The defendant assigned the lease to another who accepted the assignment and went into possession of the property and failed to pay rent. It was the plaintiff's contention that the assignment to, and the accompanying assumption of the lease by, the defendant rendered the defendant directly liable to the plaintiff for the balance of the term. The defendant

allowed that the transaction resulted in privity of estate between the parties and not privity of contract so that the defendant's liability to the plaintiff continued only while it was in possession of the premises. Upon the defendant's assignment to another, its liability to the plaintiff ceased. The Court stated:

> In order to create privity of contract in the case at bar there must have been a mutual agreement by the plaintiff, defendant, and [defendant's assignor] . . . . We do not think . . . the agreement establishes plaintiff's theory as plaintiff company was not a party to it. [*Id.*, 449.]

The Court continued:

> We think the instant case is governed by *Tapert v Schultz*, 252 Mich 39 [232 NW 701 (1930)], where we held that vendors may not maintain an action at law against vendee's assignee for payments due under a land contract, even though the assignee agreed with the vendee to perform the terms of the contract, as there was no privity of contract between the assignee and vendors. [*Id.*, 450.]

The Court concluded:

> We fail to find from our examination of the record where the defendant has promised the plaintiff that it would perform under the lease. Mere payment of rent does not establish such a promise to perform and we agree with the trial court that the evidence does not show that the defendant corporation assumed the obligations of the Paragon Refining Company of Michigan under the lease and that the assignment by defendant corporation to McCausland terminated its privity of estate and all further liability for rent under the lease. [*Id.*, 451.]

Here, the trial court found the transaction between defendant and Smith created a privity of estate, and not a privity of contract. Our review of the record

leads us to the same conclusion. However, we find that the trial court's reliance on *Buhl, supra,* for its holding is a misinterpretation of *Buhl* and its progeny. Because neither an assignment existed between defendant and plaintiff, nor was a privity of contract created, defendant's obligation for rent ceased upon vacating the property.

We reverse and remand to the trial court for dismissal. We do not retain jurisdiction.